| | |
|---|---|
| In re: | Chapter 7 |
| | Bky. No. 22-60172 (MER) |
| Travis L. Burg, | |
| Debtor. | |

| | |
|---|---|
| Tony and Rachel Thoennes, | Adv. No. 22-06011 |
| Plaintiffs, | |
| v. | |
| Travis L. Burg, | |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs Tony and Rachel Thoennes (the "<u>Plaintiffs</u>"),[1] by and through their undersigned counsel, respectfully submit this Memorandum of Law in opposition to the Debtor's *Motion for Judgment on the Pleadings* (the "<u>Motion</u>") [Dkt. No. 12].

### PROCEDURAL POSTURE

The Plaintiffs filed a complaint against the Debtor objecting to his discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(5), or alternatively, seeking an exception to discharge

---

[1] Any capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Complaint. [Dkt. No. 1].

under 11 U.S.C. § 523(a)(6). The Debtor filed and served his Answer on October 11, 2022. [Dkt. No. 6].

This matter is set for trial starting on May 24, 2023. [Dkt. No. 20]. On April 19, 2023, Defendant filed and served the Motion, without a supporting memorandum of law, requesting that the Court enter judgment on the pleadings. Defendant then filed an Amended Notice of Hearing and Motion for Judgment on the Pleadings on May 17, 2023,[2] setting a hearing on the motion for May 24, 2023 at 9:00 a.m. [Dkt. No. 30].

## INTRODUCTION

As alleged in the Complaint, this is a case about fraud, deceit, and willful misconduct by the Debtor, targeted directly at the Plaintiffs.[3] The Debtor bought a strong and viable business from the Plaintiffs, acquiring all stock and replacing the Plaintiffs as the sole and direct owner. Instead of paying the agreed purchase price and ensuing stipulated judgment, the Debtor destroyed the value of the business and his shares in it, which secured his obligations to the Plaintiffs. The Debtor looted the business of significant cash and assets, treating it as his personal piggy bank; retained a "consultant" who helped the Debtor fraudulently shelter the assets and received over $1 million for his efforts; shut down the business operations to conceal the Debtor's many bad acts; and then

---

[2] The Debtor emailed a memorandum of law to the Plaintiffs' counsel on May 17, 2023. In preparing to file this opposition to the Motion, the Plaintiffs' counsel observed that the Debtor's memorandum of law in support still has not been filed. Attached hereto as Exhibit A is the email with the Debtor's memorandum of law received on May 17, 2023.

[3] To avoid unnecessary repetition, the Plaintiffs respectfully refer the Court to the Complaint, which sets forth the Plaintiffs' factual allegations and claims, and incorporate those factual allegations and claims herein.

destroyed and altered records in a further effort to hide his misconduct. After the Petition Date, the Debtor lied during his 341 Meetings and destroyed and altered even more records.

The Complaint objects to discharge on five statutory bases. Now, on the eve of trial, the Debtor moves for judgment on the pleadings. The Debtor argues that he is entitled to discharge because he committed his bad acts through a company that he wholly and solely owned and controlled. But the Bankruptcy Code does not extend its protections to a dishonest debtor who, first, uses his company as an instrument of fraud and then, after filing for bankruptcy, seeks to raise it as a shield against accountability. The Complaint amply alleges the bases for denying a discharge, and the Plaintiffs have amassed even more evidence through discovery and their continued investigation. The Motion should be denied, and the Plaintiffs should be permitted to prove their claims at trial.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(c), made applicable to this proceeding by Fed. R. Bankr. P. 7012, a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. A motion to dismiss or for judgment on the pleadings should be granted only when there is no material fact in dispute and the movant is entitled to judgment as a matter of law. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quotation omitted).

## ARGUMENT

The Debtor appears to argue that, even accepting all factual allegations as true, the Complaint fails to state a claim to relief that is plausible on its face. The Debtor's motion fails as to each count. The purpose of a discharge in bankruptcy is to "relieve an **honest** debtor from his financial burdens and to facilitate the debtor's unencumbered fresh start." *Jensen v. Bebeau (In re*

*Bebeau*), Adv. Pro. No. 21-04044, 2022 WL 17661134 (Bankr. D. Minn. Dec. 12, 2022) (quoting *In re Kasden*, 209 B.R. 239, 241 (8th Cir. B.A.P. 1997)) (emphasis added). The Complaint makes detailed allegations about this Debtor's dishonesty, fraud, and willful and malicious conduct, and it set forth multiple, independent bases to deny a discharge. The Motion should be denied.

## I.     The Complaint Sufficiently Pleads Denial of Discharge Under § 727(a)(2) of the Bankruptcy Code (Count I).

Under § 727(a)(2) of the Bankruptcy Code, a court may deny a debtor's discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). The Complaint alleges that, within one year before the Petition Date and with intent to hinder, delay, or defraud the Plaintiffs, the Debtor transferred, removed, destroyed, mutilated, or concealed Birchwood Electric's assets and business/financial records, or permitted others to do so on his behalf, to: (a) manipulate the DSCR; (b) deplete Birchwood Electric's assets; (c) divert Birchwood Electric's assets to himself, Rodenwald, the Rodenwald Shell Companies, and/or Grubworm; (d) avoid paying the Plaintiffs amounts due and owing under the Note; and (e) conceal the evidence of his fraudulent scheme. (Compl. ¶ 106 (Count I).)

The Debtor argues that Count I should be dismissed, because the assets of Birchwood Electric were not assets of the Debtor. This argument fails for at least three reasons. First, the Debtor "destroyed" "property of the debtor" under § 727(a)(2)(A) by devaluing his ownership interest in Birchwood Electric. Second, the Debtor "destroyed" "property of the estate" after the Petition Date under § 727(a)(2)(B) by continuing to alter and delete the business's books and

records. Third, property of Birchwood Electric should be treated as property of the Debtor's bankruptcy estate under an "alter ego" theory under Minnesota law.

### A. The Debtor "destroyed" "property of the debtor" under § 727(a)(2)(A) by destroying the value of his stock in Birchwood Electric.

As the Debtor acknowledges, when a debtor owns shares of a corporation, the shares are property of the debtor that become property of the bankruptcy estate. The Debtor was the 100% owner of the stock of Birchwood Electric, a profitable business. Within one year of the Petition Date, the Debtor intentionally devalued (i.e., destroyed and mutilated) the Birchwood Electric stock by taking equity distributions, siphoning funds, fraudulently manipulating the DSCR, and ultimately closing the business, laying off all employees, and destroying business records, including customer information. (Compl. ¶¶ 41-64, 73-89.)

The Debtor thus destroyed his own property—his stock in Birchwood Electric—with the intent to hinder, delay, or defraud creditors. Recent decisions across jurisdictions denying discharge under Section 727(a)(2)(A) are on point. For example, in *Bank of Canton v. McNamara (In re McNamara)*, 620 B.R. 178, 192-95 (Bankr. D. Mass. 2020), the court denied discharge because the individual debtor intended to hinder and delay the lender by causing his business— and thus his stock interest in the business—to be significantly devalued, and thus, "partially destroyed or removed." The court held that the debtor's dissipation of the value of his stock constituted the destruction or removal of his property under § 727(a)(2)(A). *Id.*

Similarly, in *Spence v. Hintze (In re Hintze)*, 570 B.R. 369, 387-88 (Bankr. N.D. Fla. 2017), *aff'd*, No. 1:17cv18-MCR/GRJ, 2018 WL 10879105, at *6 (N.D. Fla. Mar. 26, 2018), the court denied discharge because the individual debtors "destroyed" their 100% ownership interest in an LLC by transferring out nearly all the LLC's assets. The bankruptcy court reasoned, in a holding

adopted on appeal: "If one can 'destroy' a reputation, then it stands to reason that one can destroy the value of a membership interest in an LLC." *Id.* at 388. *See also Villa Oaks, LLC v. Shakir (In re Shakir)*, 623 B.R. 532, 540 (Bankr. N.D. Ill. 2021) ("[E]ven though a businessman-debtor might only own the shares of a company he controls rather than its assets . . . a debtor's fraudulent manipulation of the assets or cashflows of his business may come within the scope of Section 727(a)(2).").

Here, as in these cases, the Debtor himself owned and controlled Birchwood Electric. By looting Birchwood Electric's assets, the Debtor destroyed his ownership interests in Birchwood Electric—which were "property of the debtor" by statute, and in which the Plaintiffs hold a security interest. The Debtor took these actions with the intent of defrauding the Plaintiffs and hindering their ability to collect the debt owed to them. The Complaint alleges this intent in two ways. First, the Debtor intentionally manipulated the DSCR with the specific purpose of avoiding making loan payments to the Plaintiffs. (Compl. ¶¶ 34-57.) Second, the Debtor intentionally devalued the business—in which the Plaintiffs retained a security interest—with the specific purpose of hindering the Plaintiffs' ability to collect on the debt. (Compl. ¶¶ 78-89.) The stock (i.e., the Plaintiffs' collateral) is now worth nothing, while the Debtor has a new electrical contracting business that was built from the goodwill of Birchwood Electric but remains unencumbered by his obligations to the Plaintiffs. (Compl. ¶¶ 6, 78, 90-92.)

The facts here are thus easily distinguishable from the Debtor's primary authority, *NE. Neb. Econ. Dev. Dist. v. Wagner (In re Wagner)*. There, the Eighth Circuit B.A.P. found that a transfer of funds belonging to an LLC of which the debtor was a shareholder was not a transfer of property of the debtor's estate. 305 B.R. 472, 475-76 (B.A.P. 8th Circuit 2004). The court did not

consider or address whether the debtor "***destroyed***" his own individual property by devaluing his ownership shares in the LLC. In fact, there was no devaluation or destruction at all. The individual debtor instead used the transferred funds to pay the LLC's operating expenses, "believing that the company had a good chance of surviving the economic downturn if he could keep it afloat." *Id.* at 474.

The Debtor here, in contrast, intentionally looted and closed down his wholly owned business—thereby devaluing and destroying his own stock—in order to hinder, delay, and defraud the Plaintiffs. He did not simply cause the transfer of company property in which he had "a mere *derivative interest*." *Id.* at 475. He deliberately wrecked an entire business that he directly and wholly owned, erasing the value of his own stock, which is sufficient for purposes of § 727(a)(2).

**B.    The Debtor "destroyed" "property of the estate" after the Petition Date under § 727(a)(2)(B).**

"Whereas Section 727(a)(2)(A) encompasses debtor's prepetition acts, Section 727(a)(2)(B) covers any post-petition acts by a debtor to transfer or conceal property of the estate." *RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684, 707 (Bankr. N.D. Ga. 2017) (internal citation omitted). The Debtor removed, destroyed, mutilated, and/or concealed much of the property of Birchwood Electric prior to filing the Petition. When the Debtor closed the business, any remaining property of Birchwood Electric—in this case, certain of its books and records—became property of the Debtor's estate. Immediately after filing the Petition in May 2022 and continuing through July 2022, the Debtor then continued to remove or alter those remaining books and records to hide the evidence of his misconduct, self-dealing, siphoning of funds, and manipulations of the DSCR. (Compl. ¶¶ 7, 89, 93, 95-96.) The Complaint sufficiently alleges that

the Debtor should be denied a discharge pursuant to § 727(a)(2)(B) for the transfer, removal, destruction, mutilation, and/or concealment of property of the estate after the Petition Date.

### C. Property of Birchwood Electric should be treated as property of the Debtor's bankruptcy estate pursuant to an "alter ego" theory under Minnesota law.

Alternatively, Birchwood Electric's corporate property should be treated as property of the Debtor's estate under an alter ego theory. *See Seaver v. Burwell (In re Burwell)*, 391 B.R. 831 (B.A.P. 8th Cir. 2008); *see also Serio v. DiLoreto (In re DiLoreto)*, 266 F. App'x 140 (3d Cir. 2008) (denial of discharge under § 727(a)(2) affirmed on a reverse-piercing analysis where debtor used corporations to conceal assets from his creditors); *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 811-12 (B.A.P. 1st Cir. 2005) (affirming denial of debtors' discharge and piercing of corporate veil based on transfer and loss of assets of debtors' companies); *Hintze*, 570 B.R. at 387, *aff'd*, 2018 WL 10879105, at *12 (denying discharge and piercing corporate veil to find that LLC assets transferred were property of the debtors under § 727); *Agai v. Mihalatos*, 527 B.R. 55 (Bankr. E.D.N.Y. 2015) (explaining that alter ego doctrine can be used to deny discharge under § 727); *Ng v. Adler (In re Adler)*, 494 B.R. 43 (Bankr. E.D.N.Y. 2013), *aff'd*, 518 B.R. 228 (E.D.N.Y. 2014) (piercing corporate veil and denying discharge based on the debtor's actions taken with respect to corporate assets and records); *Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 79 (Bankr. S.D. Ohio 2012) (collecting cases applying alter ego and reverse veil piercing to treat company assets transferred as property of the individual debtor under § 727(a)(2)(A)).[4]

---

[4] *See also Neary v. Mosher (In re Mosher)*, 417 B.R. 772 (Bankr. N.D. Ill. 2009) (court could use alter ego finding to treat corporate assets as assets of the debtor in deciding whether debtor's transfer or concealment of assets warranted denial of his discharge); *Blomberg v. Riley (In re Riley)*, 351 B.R. 662 (Bankr. E.D. Wis. 2006) (corporation's majority owner held to be corporation's alter ego such that the corporation's transfer of property with intent to hinder, delay, or defraud was sufficient to withhold the majority owner's discharge under § 727(a)(2)(B));

Here, the Complaint lays out ample factual allegations that property of Birchwood Electric should be treated as property of the Debtor's estate under an "alter ego" theory. Minnesota courts "focus on factors such as the failure to observe corporate formalities, siphoning of funds by the individual, absence of corporate records, and the existence of the corporation merely as a façade for the individual." *United States v. Scherping*, 187 F.3d 796, 802 (8th Cir. 1999). Piercing is warranted if the entity "has operated in a fraudulent or unjust manner toward" the party seeking to disregard it. *Id.* Here, "[a]lthough the Complaint did not use the phrase 'pierce the corporate veil,' it did clearly lay out the factual allegations necessary to support a claim for relief based upon the 'alter ego' theory under Minnesota law." *Burwell*, 391 B.R. at 836-37. The Complaint alleges that the Debtor:

- Wholly and solely owned and controlled Birchwood Electric, personally causing or directing all relevant conduct involving Birchwood Electric (e.g., Compl. ¶¶ 3-6, 33);

- Siphoned funds from Birchwood Electric to himself, his family, and others (Compl. ¶¶ 4, 42, 45, 47, 53-55, 58-63, 67-68, 80-81, 87);

- Altered and destroyed Birchwood Electric's corporate records (Compl. ¶¶ 4, 7, 43-44, 73-75, 85-86, 89, 93-96);

- Used the business to fund personal expenses (Compl. ¶¶ 49, 51-52, 67-68); and

- Operated the business in a fraudulent manner toward the Plaintiffs, as described above and alleged throughout the Complaint.

---

*Jimenez v. Rodriguez (In re Rodriguez)*, Adv. Pro. No. 06-01119, 2008 WL 3200215, at *7 (Bankr. S.D.N.Y. Aug. 5, 2008) (noting "[t]here is authority that an individual debtor causing his wholly-owned corporation to transfer property can provide a basis for denial of discharge under § 727(a)(2)(A)," and citing cases but finding the theory not justified on the facts); *Compton v. Bonham (In re Bonham)*, 224 B.R. 114, 116-17 (Bankr. D. Alaska 1998) (piercing the corporate veil where corporation was used in a Ponzi scheme and denying discharge under § 727(a)(2)(A)); *In re Gherman*, 103 B.R. 326, 330-31 (Bankr. S.D. Fla. 1989) (applying Florida law to disregard corporate form of companies dominated by debtor to mislead creditors such that each was an alter ego and denying discharge under § 727(a)(2)(A)).

The Debtor used his wholly owned business to perpetrate a fraud directed at the Plaintiffs. The alter ego doctrine applies to precisely this situation: to prevent fraudsters like the Debtor from wielding the corporate form as a tool for their willful and malicious conduct. The Plaintiffs have sufficiently pled a claim for denial of discharge under § 727(a)(2) and are entitled to proceed to trial on Count I.

## II. The Complaint Sufficiently Pleads Denial of Discharge Under § 727(a)(3) of the Bankruptcy Code (Count II).

Under § 727(a)(3) of the Bankruptcy Code, a court may deny a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The Debtor argues that Count II fails, because an individual debtor's failure to maintain books and records of a corporation is not in itself sufficient to deny that debtor a discharge under § 727(a)(3). The Debtor contends that an objection to discharge must be based on the debtor's failure to produce books and records which depict the ***individual*** debtor's finances, not that of the debtor's ***corporation***. This argument also fails.

Section 727(a)(3) exists so courts and creditors need not speculate about a debtor's actual financial position. Where, as here, a corporation and an individual debtor are so closely connected, the debtor's concealment, destruction, or alteration of business records warrants the denial of discharge.  As one court explained: "Any other outcome would allow a closely held business to work as a shield, protecting relevant information behind the veil of the corporate façade. . . . A lack of business records relating to a company substantially intertwined with a debtor may provide

the basis for the denial of a debtor's individual discharge under § 727(a)(3)." *In re Kandel*, Adv. Pro. No. 12-6003, 2015 WL 1207014 (Bankr. N.D. Ohio Mar. 13, 2015). For this reason, the majority of courts—including the Seventh Circuit—have expressly rejected the Debtor's "restricted" reading of § 727(a)(3). *In re Hao*, Adv. Pro. No. 22-01095, 2023 WL 3470515 (Bankr. E.D. Va. May 16, 2023) (collecting cases nationwide, including *Union Planters Bank N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002)).

This Court should adopt the majority view and reject the Debtor's self-serving reading, which "would make the statute almost meaningless, in a world where virtually all business activities are conducted through the use of corporations, limited liability companies and partnerships." *In re Hao*, 2023 WL 3470515, at *6. The facts here underscore the absurdity of the Debtor's interpretation. As alleged in the Complaint, Birchwood Electric is central to all aspects of the Debtor's bankruptcy case:  it was the origins of his obligations to the Plaintiffs, the source of all his income, and the mechanism of his fraud.  The Complaint alleges that the Debtor destroyed and altered Birchwood Electric's records in order to conceal his scheme and true financial condition. The Debtor siphoned funds from Birchwood Electric and diverted those funds to, in part, himself and Grubworm. (Compl. ¶¶ 4, 43, 47-49, 51, 53-54, 58-64, 68.) Then, without justification, the Debtor concealed, destroyed, and/or falsified the books and records of Birchwood Electric and Grubworm to hide his tracks. (Compl. ¶¶ 4, 7, 43-44, 73-75, 85-86, 89, 93-96.) The Debtor wholly owns Birchwood Electric and Grubworm and is in complete control of the businesses' books and records. The Debtor's destruction of these critical books and records impacted the Plaintiffs' ability to determine the Debtor's financial condition.

As the Debtor himself recognized, the Debtor and his wholly owned business entities are sufficiently entwined such that the records of those businesses are essential to an accurate understanding of the Debtor's financial condition. That is why he destroyed corporate records— both before and after his 341 Meetings began—and then lied about it. Under these facts, the Plaintiffs are entitled to proceed to trial on Count II. *See also Forbes v. Moore (In re Moore)*, 559 B.R. 243, 255 (Bankr. M.D. Fla. 2016) ("Because of the intertwined nature of Defendants' finances with those of [their business], [the business's] financial records are critical to an understanding of Defendants' financial condition."); *Kandel*, 2015 WL 1207014 at *8 ("withholding business information substantially intertwined with the debtor's personal capacity completely ignores the purpose of the statute") (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)); *In re Spitko*, 357 B.R. 272, 307-08 (Bankr. E.D. Pa. 2006) (denying discharge under § 727(a)(3) where "the financial records of [the debtors'] closely held entities were needed in order for the bankruptcy trustee and creditors to have accurate information concerning the debtors' assets that might be available for liquidation").[5]

_____

[5] Even the Debtor's cases are not to the contrary. The courts there simply declined to deny discharge because, under the specific facts presented, there was insufficient connection between the individual debtor's financial condition and the business records in question. *See JP Morgan Chase Bank v. Hobbs (In re Hobbs)*, 333 B.R. 751, 757 (Bankr. N.D. Tex. 2005) (declining to deny discharge based on the debtor's inadequate production of corporate records where the debtor was not in total control of the records and the company had been dissolved for almost three years before the bankruptcy petition was filed); *Lewis v. Summers (In re Summers)*, 320 B.R. 630, 638 (Bankr. E.D. Mich. 2005) (declining to deny discharge under § 727(a)(3) where no evidence was presented that debtor concealed, destroyed, or failed to keep or preserve any records from which his own personal financial condition or business transactions could be ascertained); *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 99 (Bankr. E.D.N.Y. 1997) (declining to deny discharge based solely on debtor's failure to maintain books and records for his various corporate entities but acknowledging that books and records of a debtor's corporation may be relevant in ascertaining an individual debtor's financial status in certain cases).

### III. The Complaint Sufficiently Pleads Denial of Discharge Under § 727(a)(4) of the Bankruptcy Code (Count III).

Under § 727(a)(4) of the Bankruptcy Code, a court may deny a debtor's discharge if "the debtor knowingly and fraudulently, or in connection with the case (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4). Count III alleges that the Debtor (a) made false statements during the Initial 341 Meeting and the Continued 341 Meeting; (b) induced the Plaintiffs to agree to the stipulated judgment and impair their Note claim under false pretenses, without disclosing that he intended to file for bankruptcy; and (c) withheld Grubworm's and Birchwood Electric's true and correct business and financial records from the Plaintiffs and the chapter 7 trustee. (Compl. ¶ 120.)

The Debtor first argues that Count III should be dismissed because the Plaintiffs "simply allege[d] that the Debtor made false statements during the Initial 341 Meeting and the Continued 341 Meeting without identifying the particular statement." This statement is patently inaccurate—the Debtor's false statements are laid out in detail across four pages in the Complaint. In part:

1. The Debtor lied at the Initial 341 Meeting when he denied deleting or modifying QuickBooks entries or directing his spouse to do so before the Petition Date.

2. The Debtor lied at the Continued 341 Meeting when he denied deleting or modifying QuickBooks entries after the Petition Date.

3. The Debtor lied at both the Initial 341 Meeting and the Continued 341 Meeting when he denied that Birchwood "traded" services with other contractors and third parties, aside from Nick Burg and Leighton Broadcasting.

4.    The Debtor lied at the Continued 341 Meeting when he falsely testified that Birchwood never provided free electrical contractor services to third parties except Grubworm.

5.    The Debtor lied at the Continued 341 Meeting when he falsely testified that Birchwood had nothing to do with free work provided to Nick Burg.

6.    During both 341 Meetings, the Debtor failed to satisfactorily explain and disclose Grubworm's equity in the Rodenwald Rental Properties and the rent and other revenue the Debtor and/or Grubworm received from such properties.

(Compl. ¶¶ 93-101.)

The Debtor also argues that "the evidence . . . will show that the business records of Birchwood and Grubworm were maintained in a Quickbooks accounting file," which "Mr. Burg delivered . . . to his accountants and the trustee." This is a factual assertion—which is false and the Plaintiffs intend to rebut at trial—that is not properly considered on a motion for judgment on the pleadings. This argument also ignores the Complaint's numerous allegations that the Debtor in fact destroyed many of Birchwood's and Grubworm's records. (Compl. ¶¶ 4, 7, 43-44, 73-75, 85-86, 89, 93-96.) The Debtor similarly makes improper factual arguments to counter the allegation that the Debtor "induced the Plaintiffs to agree to the stipulated judgment and impair their Note claim under false pretenses, without disclosing that he intended to file for bankruptcy." These arguments should not be considered on the Debtor's motion for judgment on the pleadings.

The Plaintiffs are entitled to proceed to trial on Count III.

## IV.    The Complaint Sufficiently Pleads Denial of Discharge Under § 727(a)(5) of the Bankruptcy Code (Count IV).

Section 727(a)(5) of the Bankruptcy Code provides that a court may deny a debtor's discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's

liabilities." The sufficiency of a debtor's explanation for such loss or deficiency is a question of fact. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984).

The Debtor argues that Count IV should be dismissed because "[n]one of Plaintiffs' allegations bear on the financial affairs of the Debtor" and instead "focus on corporate transactions." But that is not what the Complaint says. Count IV alleges that the Debtor "failed to satisfactorily explain and disclose Grubworm's equity in the Rodenwald Rental Properties and rent and other revenue ***the Debtor and/or Grubworm*** received from such properties, which assets could be used to meet the Debtor's liabilities to the Plaintiffs. (Compl. ¶ 126) (emphasis added).

The Complaint further alleges that the Debtor "failed to satisfactorily explain (a) the consulting fees and rent that he caused Birchwood Electric to pay to Consulting by Wade; (b) the free services that he caused Birchwood Electric to provide to Rodenwald, the Rodenwald Shell Companies, family, friends, and other third parties, and (c) other amounts wrongly diverted from Birchwood Electric, either as equity draws or as part of his scheme to reduce the DSCR." (Compl. ¶ 126.) To the extent these allegations "focus on corporate transactions," it is because those transactions are directly relevant to the deficiency of the Debtor's assets. Both Grubworm and Birchwood Electric are the Debtor's wholly owned entities and the source of the Debtor's income. "If the value of [the debtor's] assets is or would be comprised predominantly of the value of his equity in certain companies, and if he . . . intentionally caused those companies to drain their assets and thereby destroy the value of his equity in the companies, he can fairly be said to have caused a deficiency in his assets relative to his liabilities." *Reid v. Wolf (In re Wolf)*, 595 B.R. 735, 786 n.38 (Bankr. N.D. Ill. 2018), *aff'd* 644 B.R. 725 (N.D. Ill. 2022). This is precisely what the Complaint alleges.

The Complaint sufficiently pleads a cause of action under § 727(a)(5). The Plaintiffs are entitled to proceed to trial on Count IV.

## V.    The Complaint Sufficiently Pleads Exception from Discharge Under § 523(a)(6) of the Bankruptcy Code (Count V).

Pursuant to § 523(a)(6), a discharge under section 727 of the Bankruptcy Code does not discharge an individual from "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." The Plaintiffs allege that the Debtor willfully and maliciously injured the Plaintiffs and the Plaintiffs' property by concealing and altering (a) Birchwood Electric's business/financial records; (b) manipulating the DSCR; (c) depleting Birchwood Electric's assets; (d) diverting Birchwood Electric's assets to himself, Rodenwald, the Rodenwald Shell Companies, and/or Grubworm; (e) inducing the Plaintiffs to agree to the stipulated judgment under false pretenses; and (f) making false statements during the Initial 341 Meeting and the Continued 341 Meeting—all as part of a scheme to wrongfully avoid paying the Plaintiffs amounts due and owing under the Note. (Compl. ¶ 130.) The Debtor argues that Count V should be dismissed because (i) the complained-of conduct did not create the debt, (ii) the Plaintiffs did not sufficiently allege willful and malicious injury, and (iii) debts for breach of contract are generally not excepted from discharge under § 523(a)(6). Each of these arguments fails.

*First*, the Debtor argues that his debt to the Plaintiffs should not be excepted from discharge because the conduct at issue occurred after the creation of the debt, and therefore the debt is not "for" willful and malicious injury pursuant to § 523(a)(6). However, the Plaintiffs' claim encompasses not only the amounts that would have been paid to the Plaintiffs but for the Debtor's fraudulent conduct, but also (i) the harm the Debtor caused the Plaintiffs by inducing them to agree

to the stipulated judgment under false pretenses, thus impairing their Note claim; (ii) the injury the Debtor inflicted on Birchwood Electric by devaluing and destroying the business; and (iii) the injury the Debtor inflicted on the Plaintiffs by destroying or otherwise dissipating the collateral that secured repayment of the Debtors obligations to the Plaintiffs. This is sufficient to except their claim from discharge under § 523(a)(6). *See Bonanza Valley State Bank v. Peterson (In re Peterson)*, 1989 WL 72264 (Bankr. D. Minn. June 27, 1989) (finding creditor entitled to exception from discharge where debtor sold collateral without remitting funds, thereby converting the bank's property and diverting those funds to the debtor's other business or to himself).

**Second**, the Debtor argues that the Plaintiffs have failed to meet the *Twombly*/*Iqbal* plausibility standard, because "the Complaint offers no facts as to § 523(a)(6) related to Defendants' [sic] violative actions" and "[t]his vagueness does not qualify as establishing the intent needed for an exception to discharge based on 'willful and malicious conduct.'" On its face, Complaint makes extensive and detailed factual allegations regarding the Debtor's willful and malicious intent. (Compl. ¶¶ 34-101, 130.) The Debtor's statement that "there is absolutely no allegation as to what Defendant did, when he did it or what his particular intentions were" is nonsensical. The Complaint's extensive and detailed allegations more than satisfy the applicable pleading standard. This argument is meritless.

**Third**, the Debtor argues that Count V should be dismissed because "debts for breach of contract are generally not excepted from discharge under § 523(a)(6)." The cases the Debtor relies on are distinguishable, as they hold that "***simple breach of contract*** . . . is not included in the limited exceptions to discharge in bankruptcy." *In re McDowell*, 299 B.R. 552, 555 (Bankr. N.D. Iowa 2003). The basis for the Plaintiffs' § 523(a)(6) claim is more than a simple breach of contract,

as it also arises from the Debtor's actual fraud and intentional destruction of the Plaintiffs' collateral. This is a recognized basis for exception from discharge under § 523(a)(6). *See*, *e.g.*, *In re Geiger*, 113 F.3d 848, 852 (8th Cir. 1997) ("[T]he correct rule is that a judgment debt cannot be exempt from discharge in bankruptcy unless it is based on what the law has for generations called an intentional tort, a legal category that is based on 'the consequences of an act rather than the act itself.'") (citation omitted); *see also Iberg v. Prewett (In re Iberg)*, 395 B.R. 83, 90 (Bankr. E.D. Ark. 2008) (intentional breach of contract may be excepted from discharge under § 523(a)(6), however, "when it is accompanied by malicious and willful *tortious* conduct") (citing *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992) (emphasis in original); *Crow v. Glossip (In re Glossip)*, 331 B.R. 871, 876 (Bankr. W.D. Mo. 2005) (debt arising from breach of contract could not be excepted from discharge pursuant to § 523(a)(6) where creditor could not show it had a property interest that had been injured by the debtor's actions).

The Court should deny the Debtor's motion and allow Count V to proceed to trial.

## <u>CONCLUSION</u>

The Debtor has failed to show that there is no material fact in dispute or that the Debtor is entitled to judgment as a matter of law. The Plaintiffs respectfully request that the Court deny the Motion and allow this matter to proceed to trial on all Counts.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

Dated: May 22, 2023

*/e/ Mary A. Scott*
Michael B. Fisco (#0175341)
Peter D. Kieselbach (#0397531)
Mary A. Scott (#0398534)
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Phone: (612) 259-9700
Email: fiscom@gtlaw.com
Email: kieselbachp@gtlaw.com
Email: mary.scott@gtlaw.com

*Counsel for Plaintiffs Tony Thoennes
and Rachel Thoennes*

**EXHIBIT A**

| | |
|---|---|
| **From:** | Sam Calvert <calcloud@gmail.com> |
| **Sent:** | Wednesday, May 17, 2023 1:28 PM |
| **To:** | Scott, Mary A. (Assoc-MSP-Bky) |
| **Cc:** | Fisco, Michael (Shld-MSP-Bky); Mark, Whitney A. (Assoc-MSP-Bky); Alonso Gayon, Carlos (LC-MSP-Bky) |
| **Subject:** | Re: Travis Burg - Motion for judgment on the pleadings |
| **Attachments:** | Memorandum 4 18 2023 WORD.pdf |

Here is the memo that should have been filed.

Sam Calvert
1011 2nd ST N STE 107
St. Cloud MN 56303
320-252-4473

On Wed, May 17, 2023 at 1:20 PM <Mary.Scott@gtlaw.com> wrote:

> Sam,
>
> We are confused about your motion. Since your last email below, it does not appear that you have contacted the court to set a new date and time for your motion, and we have not received any new notice of the motion.
>
> I understand you had the attached exchange with Michael yesterday regarding a late-filed memorandum related to your motion. The attached memorandum, which you filed and emailed to us yesterday, however, is called a "trial memo." It appears to make arguments in support of your motion for judgment on the pleadings, but it also references the parties' stipulation of undisputed facts and the Plaintiffs' trial exhibits, whereas a Rule 12(c) motion would typically be limited to the pleadings (unless you would want it converted to a motion for summary judgment).
>
> **We need to know within the next hour if you still intend to pursue your motion for judgment on the pleadings at the start of trial or whether you have withdrawn your motion. If you do intend to pursue the motion, we need to know whether this memorandum is your trial brief or a memorandum in support of your motion.** Please advise.
>
> Thanks,
>
> Mary

**Mary A. Scott**
Associate

Greenberg Traurig, LLP
90 South 7th Street | Suite 3500 | Minneapolis, MN 55402
T +1 612.259.9690 | C +1 612.224.1433
Mary.Scott@gtlaw.com | www.gtlaw.com | View GT Biography



---

**From:** Sam Calvert <calcloud@gmail.com>
**Sent:** Thursday, May 4, 2023 7:25 PM
**To:** Scott, Mary A. (Assoc-MSP-Bky) <Mary.Scott@gtlaw.com>
**Cc:** Fisco, Michael (Shld-MSP-Bky) <fiscom@gtlaw.com>; Mark, Whitney A. (Assoc-MSP-Bky) <Whitney.Mark@gtlaw.com>; Alonso Gayon, Carlos (LC-MSP-Bky) <Carlos.AlonsoGayon@gtlaw.com>
**Subject:** Re: Travis Burg - Motion for judgment on the pleadings

**\*EXTERNAL TO GT\***

Didn't occur to me. I will call the Clerk.

Sam Calvert

1011 2nd ST N STE 107

St. Cloud MN 56303

320-252-4473

On Thu, May 4, 2023 at 6:44 PM <Mary.Scott@gtlaw.com> wrote:

> Sam,
>
> With respect to the attached motion for judgment on the pleadings, we see that the hearing was noticed for the original first day of trial, which was 5/23 at 2:30 p.m. Now that the trial start date has moved, do you intend to re-notice the motion for the new trial start date or alternatively, withdraw the motion?

Thanks,

Mary


**Mary A. Scott**
Associate

Greenberg Traurig, LLP
90 South 7th Street | Suite 3500 | Minneapolis, MN 55402
T +1 612.259.9690 | C +1 612.224.1433
Mary.Scott@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Travis l. Burg                                    Bky. 22-60172-MER

                 Debtor                           Chapter 7

Tony and Rachel Thoennes,

                 plaintiffs

V.

Travis l. Burg,

                 defendant.                       Adv. 22-06011

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

Defendant Travis L. Burg ("**Defendant**") brings this motion for judgment on the pleadings as the Complaint of Plaintiffs Tony and Rachel Thoennes ("**Plaintiffs**") makes wide ranging allegations which do not correlate to the relief that they seek.   Plaintiffs' claims are based, at their core, on a breach of contract claim between Plaintiffs and Defendant.  However, as will be detailed herein, much of Plaintiffs' Complaint focuses on the conduct, assets and actions of corporations, not the Debtor.  As such, Plaintiffs' claims fail.

# ARGUMENT

## I.     Standard for Motion for Judgment on the Pleadings

Defendant brings this motion for judgment on the pleadings under Fed. R.

Civ. P. 12(c). Motions for judgment on the pleadings are generally reviewed

under the same standard as a Fed. R. Civ. P. 12(b)(6) motion. *In re Pre-Filled*

*Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018); *Ginsburg v. InBev*

*NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

In order to survive a challenge under Fed. R. Civ. P. 12(b)(6) or 12(c), "[t]he

complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621

F.3d 800, 804-05 (8th Cir. 2010) (quotations omitted). The court is required to

accept as true all factual allegations of the complaint, drawing all reasonable

inferences in favor of the nonmoving party. *Aten v. Scottsdale Ins. Co.*, 511 F.3d

818, 820 (8th Cir. 2008). The allegations must be sufficient to "raise a right to relief

above the speculative level" and to "state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court is

"not bound to accept as true a legal conclusion couched as a factual allegation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss or a motion for judgment on the pleadings, "[t]he court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002) (quotation omitted); *see Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (indicating a court may consider materials that "do not contradict the complaint"); *Mills v. City of Grand Forks,* 614 F.3d 495, 498 (8th Cir. 2010) (applying this standard to a motion for judgment on the pleadings).

## II.    Nature of Plaintiffs' Claims

Plaintiffs' claims are for denial of discharge (§ 727) and for exception to discharge (§ 523).   Denial of a discharge is a harsh remedy and, accordingly, the provisions under § 727 of Title 11 of the United States Code "are strictly construed in favor of the debtor." See *Korte v. Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 471 (8th Cir. BAP 2011) (quoting *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589–90 (Bankr. D. Minn. 1987)).

In determining whether a particular debt falls within the ambit of § 523, the statute should generally be construed liberally in favor of the debtor and strictly against the objecting creditor in order to effectuate the fresh start principles which pervade the entire bankruptcy system. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915); *Caspers v. Van Horne (In re Van Horne )*, 823 F.2d 1285, 1287 (8th Cir. 1987); 3 Collier on Bankruptcy, ¶ 523.05A at 523–19 (15th ed.1993).

### III.    Count I Should be Dismissed

Count I of Plaintiffs' Complaint seeks denial of discharge pursuant to 11 U.S.C. § 727(a)(2).  As noted by Plaintiffs in paragraph 104 of their Complaint,

> Pursuant to Section 727(a)(2) of the Bankruptcy Code, a bankruptcy court shall not grant the debtor a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . **property of the debtor**, within one year before the date of the filing of the petition; or . . . property of the estate, after the date of the filing of the petition." (emphasis added).

In paragraph 106 of the Complaint, Plaintiffs allege the following as to the application of § 727(a)(2) to this matter.  Plaintiffs alleged that: **Debtor transferred, removed, destroyed, mutilated, or concealed Birchwood Electric's assets and business/financial records**, or permitted others to do so on his behalf,

4

to (a) manipulate the DSCR; (b) deplete Birchwood Electric's assets; (c) divert Birchwood Electric's assets to himself, Rodenwald, the Rodenwald Shell Companies, and/or Grubworm; (d) avoid paying the Plaintiffs amounts due and owing under the Note; and (e) conceal the evidence of his fraudulent scheme.

The plain language of § 727(a)(2)(A) requires that the property transferred, removed, destroyed, mutilated or concealed **must be property of the debtor**. *Trivedi v. Levine*, 2014 W.L. 7187007, *3 (Bankr. N.D. Ill. 2014) citing 11 U.S.C. § 727(a)(2)(A). Thus, the provision applies only to property owned by the debtor, not to property owned by any other person or entity. *Id.* When a debtor owns shares of a corporation, the shares are property of the debtor that become property of the bankruptcy estate when the bankruptcy is filed, but the assets of the corporation are not assets of the debtor and do not become property of the bankruptcy estate. *Id.* at *2, citing *In re Thurman*, 901 F.2d 839, 841 (10th Cir. 1990). And: "To prevail under this section, the plaintiff must show that the debtor has engaged in the proscribed conduct and that the property involved **must be property of the debtor** or the property of the debtor's estate (if the transfer occurred post-petition*)…. In this case, the property transferred was not property

of the debtor, but rather property of the LLC..." *NE. Neb. Econ. Dev. Dist. v.*

*Wagner (In re Wagner*) 305 B.R. 472, 475(B.A.P. 8th Cir. 2004. [emphasis supplied]

And: "The second requirement for denying a discharge under Section 727(a)(2)

is that the property which is transferred, concealed or removed be property of

the debtor or property of the estate. "[S]ection 727(a)(2)(A) does not apply when

the disposition involves property belonging to someone, or some entity, other

than the debtor, even if the transfer may cause an incidental effect upon the

debtor's assets." <u>*Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 299</u>

<u>(Bankr.E.D.Pa. 2006)</u>. The debtor "must have more than a mere *derivative*

*interest* in the property... [it must have] a *direct* proprietary interest." <u>*NE. Neb.*</u>

<u>*Econ. Dev. Dist. v. Wagner (In re Wagner)*, 305 B.R. 472, 475 (8th Cir. BAP 2004)</u>.

*Moyer v. Geer (In re Geer)*, 522 B.R. 365, 386 [sic—unclear which page number is

correct] (Bankr. N.D. Ga. 2014)

    The assets of Birchwood Electric were not assets of Defendant. *Id.*, citing

*Wan Ho Industrial Co., Ltd. v. Hemken (In re Hemken)*, 513 B.R. 344, 361 (Bankr. E.D.

Wis.2 014), citing, *In re Thurman*, 901 F.2d at 84 and *Wagner* <u>op. cit</u>. "Had

Congress intended to include the transfer of property of another entity, it could

have included that, but the language in subsection (2)(A) is sufficiently clear to eliminate such an interpretation. *In re Thurman,* 901 F.2d 839, 841 (10th Cir.1990)."

*In re Wagner*, 305 B.R. 472 (B.A.P. 8th Cir. 2004)Therefore, the alleged "transfer, mutilation, removal, etc." of Birchwood Electric's assets did not involve property of the Debtor as required under § 727(a)(2)(A).

It has been further held that:

> According to the plain language of the statute, there must be a disposition of "property of the debtor." Relying on this language, courts have recognized that section 727(a)(2)(A) is concerned with the disposition of property in which the debtor has a "direct proprietary interest." *In re Thurman*, 901 F.2d 839, 841 (10th Cir.1990); *In re Cassis*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998); *Matter of Woodhead*, 172 B.R. 628, 632 (Bankr. D. Neb. 1994). Therefore, section 727(a)(2)(A) does not apply when the disposition involves property belonging to someone, or some entity, other than the debtor, even if the transfer may cause an incidental effect upon the debtor's assets. See In re Thurman, 901 F.2d at 841.

> When a corporation is a bona fide entity distinct from an individual debtor-shareholder, courts have applied the above-stated principle to hold that transfers of property belonging to the corporation are outside the scope of section 727(a)(2)(A). See *In re Thurman*, 901 F.2d at 841; *In re Cassis*, 220 B.R. at 983–84; *In the Matter of Myrick*, 172 B.R. 633, 637–8 (Bankr. D. Neb. 1994); *Matter of Woodhead*, 172 B.R. at 633 ("[Section] 727(a)(2)(A) does not apply to the transfer of the assets of a corporation in which the debtor is a shareholder. [It] applies only to transfers of property in which the debtor possesses a direct proprietary interest, and does not extend to derivative interests of the debtor in his corporation's assets."); *In re Srour*,

138 B.R. 413, 420 (Bankr. S.D.N.Y. 1992). For example, in *In re Cassis*, the court stated that:

> A debtor who is a shareholder in a corporation will not be denied a discharge based on transfer of or injury to corporate property. The plaintiff has the burden to establish that the property is property of the estate. It is not because the debtor/shareholder is not the owner of property of the corporation. The property interest of the debtor and the debtor's estate is limited to the stock certificates.

> Most courts considering whether a transfer of corporate property supports denial of discharge in an individual debtor's case have concluded it does not. Even though a debtor may have caused a corporation to fraudulently transfer assets, that conduct does not support denial of discharge because the debtor has not transferred his own property.

*In re Cassis*, 220 B.R. at 983–84 (internal citations omitted).

*In re Spitko,* 357 B.R. 272, 299 (Bankr. E.D. Pa. 2006).

Based on the foregoing, Count I of the Complaint should be dismissed.

## IV.     Count II of the Complaint Should be Dismissed

Plaintiffs fail to properly assert a claim under 11 U.S.C. § 727(a)(3) in Count

II of their Complaint.  Per the Complaint, paragraph 111, "Pursuant to Section

727(a)(3) of the Bankruptcy Code, a bankruptcy court shall not grant the debtor a

discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to

keep or preserve any recorded information, including books, documents,

records, and papers, **from which the <u>debtor's</u> financial condition or business transactions might be ascertained**, unless such act or failure to act was justified under all of the circumstances of the case." (emphasis added). Plaintiffs then allege that:

> 113. Both before and after the Petition Date, the Debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve the business and financial records of **Birchwood Electric and Grubworm**, from which the Debtor's financial condition or business transactions might be ascertained.

> 114. The Debtor's acts or failures to act were not justified under the circumstances of the case. Instead, the Debtor acted with intent to (a) manipulate the DSCR; (b) deplete Birchwood Electric's assets; (c) divert Birchwood Electric's assets to himself, Rodenwald, the Rodenwald Shell Companies, and/or Grubworm; (d) avoid paying the Plaintiffs amounts due and owing under the Note; and (e) conceal the evidence of his fraudulent scheme.

The purpose of § 727(a)(3) is to ensure that creditors and the trustee are given sufficient information to understand the debtor's financial condition. *In re Moore*, 559 B.R. 243, 254 (Bankr. M.D. Fla. 2016). This recordkeeping requirement does not mandate a full accounting of every business transaction, but there should be some orderly records from which the debtor's present and past financial condition can be ascertained with substantial completeness and accuracy. *Id.* Each case is determined on its own facts, although a debtor who is

involved in business may be subject to a more stringent standard than a debtor who is an unsophisticated wage earner. A debtor is required to "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.

An individual debtor's failure to maintain books and records of a corporation is not in itself sufficient to deny that debtor a discharge under § 727(a)(3) because an objection to discharge must be based on the debtor's failure to produce books and records which depict the individual debtor's finances, not that of his or her corporation. *Krohn v. Cromer (In re Cromer )*, 214 B.R. 86, 99 (Bankr. E.D. N.Y. 1997); See also *Phillips v. Nipper (In re Nipper )*, 186 B.R. 284, 289 (Bankr. M.D. Fla. 1995) ("A debtor's discharge cannot be denied where production of corporate financial records is inadequate because the corporation is a separate entity."); *JP Morgan Chase Bank v. Hobbs (In re Hobbs )*, 333 B.R. 751, 758 (Bankr. N.D. Tex. 2005) (refusing to deny debtor's discharge based on the inadequate production of corporate records because the debtor was in bankruptcy individually and, therefore, the corporate records were not within

the statute); *Lewis v. Summers (In re Summers )*, 320 B.R. 630, 638 (Bankr. E.D.

Mich. 2005). (overruling objection to discharge of debtor pursuant to § 727(a)(3)

because the plaintiff introduced no evidence to show that the individual debtor

failed to keep or preserve records regarding his own personal business

transactions-all of the records alleged to be insufficient related to the debtor's

wholly owned corporation; as such, the plaintiff failed to meet its burden of

proof at trial).

Further, based on the Complaint itself, Plaintiffs were able to access the

corporate records which they claim that Defendant did not maintain.  See, e.g.,

paragraph 95 of the Complaint.

Based on the foregoing, Count II of the Complaint should be dismissed.

## V.    Count III of the Complaint Should be Dismissed

In Count III, Plaintiffs seek to deny Debtor's discharge based on 11 U.S.C. §

727(a)(4).  Per the Complaint, at paragraph 118, the statute provides:

> Pursuant to Section 727(a)(4) of the Bankruptcy Code, a bankruptcy court
> shall not grant the debtor a discharge if "the debtor knowingly and
> fraudulently, in or in connection with the case (A) made a false oath or
> account; (B) presented or used a false claim; (C) gave, offered, received, or
> attempted to obtain money, property, or advantage, or a promise of
> money, property, or advantage, for acting or forbearing to act; or (D)

withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, **relating to the debtor's property or financial affairs**."

To prevail on a Section 727(a)(4)(A) claim, the objecting party must plead and prove five elements: "(1) [the debtor] made statements under oath **in connection with his bankruptcy case**; (2) the statements were false; (3) [the debtor] knew the statements were false; (4) [the debtor] made the statements with fraudulent intent; and (5) the **statements materially related to [the debtor's] bankruptcy case**." *Web Holdings, LLC v. Cedillo (In re Cedillo)*, 573 B.R. 451, 477 (Bankr. E.D. N.Y. 2017).  In paragraph 120 of the Complaint, Plaintiffs allege that "The Debtor knowingly and fraudulently (a) made false statements during the Initial 341 Meeting and the Continued 341 Meeting; (b) induced the Plaintiffs to agree to the stipulated judgment and impair their Note claim under false pretenses, without disclosing that he intended to file for bankruptcy; and (c) withheld Grubworm's and Birchwood Electric's true and correct business and financial records from the Plaintiffs and the chapter 7 trustee.

In this Count, Plaintiffs simply allege that the Debtor made false statements during the Initial 341 Meeting and the Continued 341 Meeting

without identifying the particular statement. The false statement must be "both material and made with intent." *Korte*, 262 B.R. at 474. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Section 727(a)(4)(A) states that a court shall grant a debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case — made a false oath or account." To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. *In re Aubrey*, 111 B.R. 268, 274 (9th Cir. BAP 1990); *In re Ford*, 159 B.R. 590 (Bankr.D.Or.1993). *In re Wills*, 243 B.R. 58 (B.A.P. 9th Cir. 1999).

As to withholding records, the evidence, and indeed paragraph 95 of the Complaint, will show that the business records of Birchwood and Grubworm were maintained in a Quickbooks accounting file. Mr. Burg delivered the computer with the Quickbooks accounting to his accountants and the trustee and

plaintiffs have had full access to it – again, for example, see paragraphs 95 and 96 of the Complaint. And it must be pointed out that the records which plaintiffs claim were withheld are not Travis Burg's records, but the records of companies in which Mr. Burg was the shareholder or member.

Plaintiffs then allege that the Debtor "induced the Plaintiffs to agree to the stipulated judgment and impair their Note claim under false pretenses, without disclosing that he intended to file for bankruptcy." This allegation has nothing to do with § 727(a)(4). When the parties reached their settlement, Plaintiffs were already owed money and Debtor had the right to file bankruptcy. No promise of the Debtor in state court caused Plaintiff's loss. In fact, Plaintiffs filed a proof of claim [Claim No.2, filed on Nov. 1, 2022] for an amount which they re-calculated as the full amount of their claimed debt – not the compromised amount. [1] Moreover, the evidence will show that plaintiffs well knew that Mr. Burg had to consider bankruptcy before the state court judgment was entered (e.g., email of Rachel Thoennes Tuesday, May 10, 2022: "Sam, We understand that Travis does not want to file for bankruptcy, but we are prepared for him to take that route. If

_____

[1] It's irrelevant in this proceeding, but the proof of claim overstates the principal amount of the debt by $281,196.51, according to a neutral accountant.

he would like to avoid it then he needs to pay us $xxx in cash. [dollar amount redacted]".  As far as delay, any delay in entry of the judgment is not attributable to Travis Burg.  The plaintiff's counsel did not submit the proposed Findings of Fact, etc., to the state court until the evening of Thursday, May 26, 2022;  the state court judge did not enter the order for judgment until Monday, May 31, 2022, which is the same date that Travis Burg's bankruptcy petition was filed.  Plaintiffs literally sustained no delay whatever because of Mr. Burg's last ditch settlement offer.

Count III of the Complaint should be dismissed.

## VI.    Count IV of the Complaint Should be Dismissed

Count IV of the Complaint, premised on 11 U.S.C. § 727(a)(5) should be dismissed.  Per the Complaint, at paragraph 124, "Pursuant to Section 727(a)(5) of the Bankruptcy Code, a bankruptcy court shall not grant the debtor a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."   Plaintiffs allege that:

> Here, the Debtor has failed to explain satisfactorily the loss of assets and/or deficiency of assets to meet the Debtor's liabilities to the Plaintiffs. For

example, during both the Initial 341 Meeting and the Continued 341 Meeting, the Debtor failed to satisfactorily explain and disclose Grubworm's equity in the Rodenwald Rental Properties and rent and other revenue the Debtor and/or Grubworm received from such properties, which assets could be used to meet the Debtor's liabilities to the Plaintiffs. The Debtor has also failed to satisfactorily explain (a) the consulting fees and rent that he caused Birchwood Electric to pay to Consulting by Wade; (b) the free services that he caused Birchwood Electric to provide to Rodenwald, the Rodenwald Shell Companies, family, friends, and other third parties; and (c) other amounts that he wrongly diverted from Birchwood Electric, either as equity draws or as part of his scheme to reduce the DSCR.

Complaint, par. 126.

None of Plaintiffs' allegations bear on the financial affairs of the Debtor.

Instead, they each focus on corporate transactions. It has been held that:

… § 727(a)(5) concerns only assets belonging to the debtor. Section 727(a)(5) does not require [the debtor] to explain the deficiency of [corporate] assets because the assets were owned by the corporation, not [the debtor]. *Fiandola v. Moore (In re Moore)*, 508 B.R. 488, 495 (Bankr. M.D. Fla. 2014). This decision was affirmed by the 11th Circuit in an unpublished case on Sept. 9, 2015, case number 15-11195.

See also *In re Moore*, 559 B.R. 243, 257 (Bankr. M.D. Fla. 2016); *In re Harmon*, 379 B.R. 182, 190 (Bankr. M.D. Fla. 2007) (the party objecting to discharge must first prove that the debtor at one time owned the assets which are no longer available for creditors).

Count IV of the Complaint should be dismissed.

16

## VII. Count V Should be Dismissed

Count V of Plaintiff's Complaint seeks to except Plaintiffs' claim from Debtor's discharge pursuant to 11 U.S.C. § 523(a)(6) which paragraph 129 states "a discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." In furtherance of this claim, Plaintiffs state "The Debtor willfully and maliciously injured the Plaintiffs and Plaintiffs' property by concealing and altering (a) Birchwood Electric's business/financial records; (b) manipulating the DSCR; (c) depleting Birchwood Electric's assets; (d) diverting Birchwood Electric's assets to himself, Rodenwald, the Rodenwald Shell Companies, and/or Grubworm; (e) inducing the Plaintiffs to agree to the stipulated judgment under false pretenses; and (f) making false statements during the Initial 341 Meeting and the Continued 341 Meeting—all as part of a scheme to wrongfully avoid paying the Plaintiffs' amounts due and owing under the Note." Complaint, par. 130.

### A. Alleged Injury Did not Create the Debt

It should be noted at the outset that each item of which Plaintiffs complain occurred subsequent to the creation of the debt at issue in this case.  In other words, the complained-of conduct did not create the debt.   In the case of *In re Gaddy*, 977 F.3d 1051 (11th Cir. 2020) it was held that:

> To be exempted from discharge under this provision, an obligation must be a "debt ... for willful and malicious injury." 11 U.S.C. § 523(a)(6) (emphasis added). As the Supreme Court has explained, **" 'debt for' is used throughout [§ 523(a)] to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like."** *Cohen*, 523 U.S. at 220, 118 S.Ct. 1212 (citing American Heritage Dictionary 709 (3d ed. 1992) and Black's Law Dictionary 644 (6th ed. 1990)). In this case, the **Water's Edge debt is a contract debt that was incurred long before the challenged conveyances**. SEPH's complaint in the adversary proceeding did not allege that the Water's Edge debt was the "result of," "with respect to," or "by reason of" Gaddy's tortious conduct. The only misconduct alleged by SEPH pertains to Gaddy's fraudulent conveyances of assets. But those **conveyances occurred years after Gaddy became indebted to SEPH for the Water's Edge guaranties**, and the conveyances are not traceable to that debt, which arose from an ordinary breach of contract.

*Id.*, at 1058 (claim failed as a matter of law) (emphasis added).

As will be discussed below, each action complained of by Plaintiffs occurred subsequent to the debt.  As a matter of law, Plaintiffs' claims fail.

B.      Contract-based Claims Cannot be the Basis of Willful and Malicious Injury

A party asserting "willful and malicious injury" must allege more than the elements of the statute. Simply alleging actions were willful or malicious in a conclusory fashion is insufficient to meet the *Twombly*/*Iqbal* plausibility standard. Under this standard, a plaintiff must plead sufficient facts to enable a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and to establish "more than a sheer possibility that a defendant has acted unlawfully." *In re Fleish*, 543 B.R. 166, 170 (Bankr. M.D. Pa. 2015) (citing *Iqbal*, 556 U.S. at 678) (quoting *Twombly*, 550 U.S. at 555 (1955)). Accordingly, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

It has been held that:

> To state a claim pursuant to § 523(a)(6), the Complaint must include allegations that would establish the following elements: (1) wrongful conduct, (2) done intentionally, (3) with the knowledge substantial certainty that its conduct would produce injury, and (4) performed without just cause or excuse. *The Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434 (Bankr. E.D. Pa. 2013); *In re Vepuri*, 2009 WL 2921305, at *8 (Bankr. E.D. Pa. 2009). …
>
> > In determining whether a creditor has met its burden under §523(a)(6), courts recognize that the terms

> "willful" and "malicious" are separate elements that
> must each be proven. With regard to willfulness, the
> Movant must identify facts that demonstrate that the
> Debtor acted deliberately. With regard to malice, the
> Movant's burden is two-fold. The Movant must identify
> facts that demonstrate that the Debtor knew with
> substantial certainty that its conduct would produce
> injury and was done without just cause or excuse.

*In re Grasso*, 497 B.R. at 445.

*In re Brown*, 557 B.R. 363, 373 (Bankr. E.D. Pa. 2016).

In this case, aside from using the words "willful and malicious," the

Complaint offers no facts as to §523(a)(6) related to Defendants' supposed

violative actions. In paragraph 130, Plaintiff lists certain types of actions without

any detail. This vagueness does not qualify as establishing the intent needed for

an exception to discharge based on "willful and malicious conduct." See, *In re*

*Fleisch*, 543 B.R. 166, 170-71 (Bankr. M.D. Pa. 2015).

In *In re Cardoza*, 2019 W.L. 1982945 (Bankr. D. N.M. 2019), the Plaintiff

alleged in its complaint that, "Defendants' actions were malicious, willful and

showed an utter indifference to and conscious disregard for Plaintiff's health and

safety." Like here, that was the extent of the factual basis for the allegation of

malicious conduct. The court held, "Defendants' actions were malicious and

willful is a formulaic recitation of the legal elements and, on its own, is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 (a pleading that contains only 'labels and conclusions,' a 'formulaic recitation of the elements of a cause of action,' or 'naked assertions' devoid of 'further factual enhancement' is withstand a motion to dismiss)." *Cardoza*, at *2. The same logic applies in this case.

Furthermore, debts for breach of contract are generally not excepted from discharge under §523(a)(6). *Tari v. Huggins (In re Huggins)*, 252 B.R. 567, 569 (Bankr. M.D. Fla. 2000). This is true even in the case of an intentional breach of contract. *In re Jercich*, 238 F.3d 1202, 1205 (9th Cir.), cert. denied sub nom., *Jercich v. Petralia*, 533 U.S. 930 (2001). Such a debt will be dischargeable, unless the breach was accompanied by conduct resulting in willful and malicious injury. *Id*. And the 8th Circuit recently said:

> Section 523(a)(6) exempts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." "Congress tells us in § 523(a)(6) that malice and willfulness are two different characteristics" and they "should not be lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable." *In re Long* , 774 F.2d 875, 881 (8th Cir. 1985). Courts considering the applicability of the § 523(a)(6) exception to discharge must "first determine exactly what injury the debt is for, and

21

then determine whether the debtor both willfully and maliciously caused that injury." *In re Patch*, 526 F.3d at 1181 (cleaned up). Willfulness and maliciousness must each be shown by a preponderance of the evidence. Id. At 1180. *Luebbert v. Global Control Sys., Inc. (In re Luebbert),* 987 F.3d 771 (8th Cir. 2021)

With respect to the facts relevant to these issues, there is absolutely no allegation as to what Defendant did, when he did it or what his particular intentions were. The "willful" element of §523(a)(6) requires Plaintiff to show that Debtor intended the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Reckless or negligent conduct is not sufficient. *Id*. at 62.[2]

All of Plaintiffs' claimed damages are based on a contract – the note. See,

---

[2] It has been held that:

Section 523(a)(6) … does not apply to breaches of contract, even intentional ones. As the Supreme Court observed in *Kawaauhau*, the phrase "willful and malicious injury" is one that "triggers in the lawyer's mind the category 'intentional torts.' " *Kawaauhau*, 523 U.S. at 61, 118 S.Ct. 974. Section 523(a)(6) is therefore limited to tortious conduct. *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008) (stating that "tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6)"); *Neiman v. Irmen (In re Irmen)*, 379 B.R. 299, 312–13 (Bankr. N.D. Ill. 2007); *WISH Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578, 589 (Bankr. N.D. Ill.2 007), aff'd, No. 07 C 4756, 2008 WL 182241 (N.D.I ll. 2008); see also 4 Collier on Bankruptcy ¶ 523.12[1], at 523–91 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2011) (noting that "[s]ection 523(a)(6) generally relates to torts and not to contracts"). To state a claim under section 523(a)(6), then, a creditor must allege conduct amounting to an independent tort. *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 817 (Bankr. N.D. Ill. 2010). The elements of what constitutes an independent tort are determined by non-bankruptcy law … *Salvino*, 373 B.R. at 584.

*In re Braverman*, 463 B.R. 115, 119 (Bankr. E.D. Ill. 2011); see also, *In re Johnson*, 2007 W.L. 5065545 (Bankr. D. Minn. 2007).

Complaint at par. 26.  As a general rule, debts resulting from breach of contract, even debts resulting from intentional breach of contract, are not excepted from discharge under § 523(a)(6).  *In re Seevers*, 574 B.R. 832, 860 (Bankr. D. Neb. 2017) citing *In re Johnson*, 2007 WL 5065545, at *3 (Bankr. D. Minn. Nov. 14, 2007) (citing *In re Glatt*, 315 B.R. 501, 511 (Bankr. D.N.D. 2004)); see also *In re McDowell*, 299 B.R. 552, 555 (Bankr. N.D. Iowa 003) ("Simple breach of contract ... is not included in the limited exceptions to discharge in bankruptcy.").

Based on the foregoing, Count V should be dismissed.

## CONCLUSION

For the reasons described above, the Court should grant the Defendant judgment on the pleadings.

**CALVERT LAW OFFICE PA**

Date: April 19, 2023

*/s/ Sam V. Calvert*

Sam V. Calvert (MN ID #1431X)
1011 2nd Street North, Suite 107
St. Cloud, MN 56303
(320) 252-4473
calcloud@gmail.com
***ATTORNEY FOR DEFENDANT***
***TRAVIS L. BURG***